IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GARY STUBBS,                                :
                                            :
    Plaintiff,                         :
                                            :          CIVIL ACTION NO.
    v.                                 :          1:11-CV-1367-AT
                                            :
BANK OF AMERICA, BAC HOME                   :
LOANS SERVICING, LP, and                    :
FEDERAL NATIONAL MORTGAGE                   :
ASSOCIATION,                                :
                                            :
    Defendants.                        :

## ORDER

This matter is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint [Doc. 9].

## I.    Procedural Background

On March 21, 2011, Plaintiff Gary Stubbs filed his complaint in the Superior Court of Fulton County, Georgia, seeking cancellation of a foreclosure sale and damages based on his wrongful foreclosure claim. Defendants Bank of America, BAC Home Loans Servicing, LP ("BAC"), and Federal National Mortgage Association ("Fannie Mae") removed the action to the Northern District of Georgia based on diversity jurisdiction on April 27, 2011.

Defendants filed a motion to dismiss the complaint on May 3, 2011. Plaintiff filed a motion for leave to file amended complaint on May 6, 2011.

Recognizing that Plaintiff could amend his complaint as of right under Rule 15(a)(1), Defendants filed a motion to dismiss the amended complaint on May 19, 2011.  The Court granted Plaintiff leave to file the amended complaint, and the parties have now briefed the motion to dismiss Plaintiff's amended complaint.

Plaintiff filed his response to the motion to dismiss amended complaint outside of time.  Under this Court's Local Rules, "[a]ny party opposing a motion shall serve the party's response. . . not later than fourteen (14) days after service of the motion," and "[f]ailure to file a response shall indicate that there is no opposition to the motion." LR 7.1(B), NDGa; *see Welch v. Delta Airlines, Inc.,* 978 F. Supp. 1133, 1148 (N.D. Ga.1997).  The Eleventh Circuit has noted that a district court may dismiss a case when a party, represented by counsel (as in the instant case), fails to file a response to a motion to dismiss.  *See Magluta v. Samples,* 162 F.3d 662, 664-65 (11th Cir.1998) (citing LR 7.1(B), NDGa).  Such a dismissal is, however, within the discretion of the district court.  *Id.; Edwards v. Shalala,* 846 F. Supp. 997, 998 n. 2 (N.D. Ga.1994) ("[T]he court, in its discretion, may waive a Local Rule."); *see also Sampson v. Fulton County Jail,* 157 F. App'x 242, 243 (11th Cir. 2005).  In the Eleventh Circuit, "there is a strong policy of determining cases on their merits." *In re Worldwide Web Sys., Inc.,* 328 F.3d 1291, 1295 (11th Cir. 2003).  Therefore, because this Court's Order of May 26, 2011, might have caused confusion regarding Plaintiff's deadline to respond, and because of the strong policy in favor of deciding cases on their merits, the Court proceeds to evaluate Defendants' motion on the merits rather than

granting it as unopposed.  However, the Court **CAUTIONS** Plaintiff to be more attentive to deadlines imposed by the federal and local rules, as failing to comply with these rules may materially impact his rights.

## II.   Motion to Dismiss Standard

In determining whether a complaint states a claim upon which relief can be granted, courts accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).  To survive a motion to dismiss, a complaint must allege facts that, if true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).  A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## III.   Factual Background

Plaintiff Stubbs brings this action to set aside an alleged wrongful foreclosure.  He alleges that on or about December 2009, a representative of Bank of America informed Plaintiff that the bank would not consider modifying his mortgage loan unless he was in default on the loan payments.  (Am. Compl. ¶

6.)   After he fell behind on his payments, he was "immediately denied a loan modification" in March 2010.  (*Id.*)

In a letter dated July 20, 2010, McCurdy & Candler, L.L.C., informed Plaintiff that the property was scheduled for public foreclosure sale on September 7, 2010, before the courthouse door in Fulton County, Georgia.  (*Id.* at Ex. B.) The letter identified BAC Home Loans Servicing as the creditor and stated that the entity with the full authority to discuss, negotiate, or change all terms of the mortgage was Bank of America.  (*Id.*)  The foreclosure occurred, and Fannie Mae is now representing to Plaintiff that it owns his home pursuant to the foreclosure sale and demanding that he vacate the property.  (*Id.* ¶ 8.)

In his amended complaint Plaintiff specifically asserts that Fannie Mae owned his loan at the time of the foreclosure and BAC was merely the servicer. (*Id.* at ¶ 11.)  He attaches to the complaint letters from Bank of America and its counsel, dated June 28 and October 13, 2010, which state that Fannie Mae (or in the second letter "FNMA AA MST/SUB CW Bank REO") is the owner of his mortgage loan and Bank of America/BAC is the servicer.  (*Id.* at Exs. D and E.) These letters identifying Fannie Mae as the secured creditor considered alongside the foreclosure notice letter identifying BAC as the secured creditor created confusion about the identity of the holder of the loan.  Plaintiff alleges that no assignment to Fannie Mae was recorded in the county deed records prior to the foreclosure sale.  (*Id.* at 12.)

## IV.   Analysis

### A.   Wrongful Foreclosure

Traditional real property principles and the careful consideration required in cases involving title to land guide the Court's analysis.  Georgia courts have long recognized that harm to an interest in land is irreparable due to the "unique character of the property interest."  *Focus Entm't Int'l v. Partridge Green*, 558 S.E.2d 440, 446 (Ga. Ct. App. 2001).  The real property interest holds a special place in our legal system as in our society, especially in cases involving the potential loss of that most important, tangible piece of emotional and physical stability – the home.

Georgia law allows for a number of different means of foreclosing on a debt secured by real property, including nonjudicial foreclosure by power of sale.  *See* Frank S. Alexander, GEORGIA REAL ESTATE FINANCE AND FORECLOSURE LAW, § 1:5 (2011-12 ed.).  In authorizing this manner of foreclosure, the state provides creditors with the flexibility and efficiency of a nonjudicial procedure upon a debtor's default.  However, given the significant power that such a procedure vests in the foreclosing party, the law requires that powers of sale "shall be strictly construed and shall be fairly exercised."  O.C.G.A. § 23-2-114.[1]  Moreover, for loans secured by residential property, O.C.G.A. § 44-14-162.2 specifies the required elements of the notice letter that a creditor must send prior to the

---

[1]  Whether or not all sections of the foreclosure statute are in derogation of the common law (as Defendants question, see Reply at 5), this independent statute requires powers of sale to be strictly construed and fairly exercised.

nonjudicial foreclosure sale. This statutory section requires that the creditor advise the homeowner of the "individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." O.C.G.A. § 44-14-162.2. The creditor must send the statutory notice by "registered or certified mail or statutory overnight delivery, return receipt requested." *Id.* The statute expressly requires a higher level of notice for residential loans than nonresidential loans.

Georgia's nonjudicial foreclosure statute authorizes the *secured creditor* to foreclose in conformity with O.C.G.A. §§ 44-14-162 *et seq.*[2] "Secured creditor" is not defined in the statute and is therefore to be given its ordinary meaning. *See O'Neal v. State*, 288 Ga. 219, 220-21 (Ga. 2010) ("we apply the fundamental rules of statutory construction that require us to construe the statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage"). Merriam-Webster's Dictionary defines creditor as "one to whom a debt is owed; a person to whom money or goods are due." Black's Law Dictionary (9th ed.) defines creditor as "one to whom a debt is owed; one who gives credit for money or goods," and secured creditor as "a creditor who has the right, on the debtor's default, to proceed against collateral and apply it to the payment of the debt." Thus, according to the plain language of the statute, the secured creditor – the entity to

---

[2] "Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor *by the secured creditor* no later than 30 days before the date of the proposed foreclosure." O.C.G.A. § 44-14-162.2(a) (emphasis added).

whom the debt is owed – is authorized to foreclose pursuant to Georgia's nonjudicial foreclosure statute.

The sequence of legislative enactments, specifically the recent amendment of the statute in 2008, bolsters this understanding of the language of O.C.G.A. § 44-14-162 *et seq.* At that time, the Georgia General Assembly added the following clause to section 162: "The security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court in the county in which the real property is located." O.C.G.A. § 44-14-162(b). This addition to the statute clearly demonstrates the legislature's intent to require the identity of the secured creditor to be of public record prior to the foreclosure sale. At the same time, the legislature amended section 162.2(a) to require the secured creditor to send the pre-foreclosure notice 30 days prior to sale (rather than 15) and to require that this notice "shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor." O.C.G.A. § 162.2(a).

The legislature enacted the 2008 amendments of the foreclosure statute with the goal of making transparent both the identity of the secured creditor with authority to foreclose and the identity (and contact information) of the party with authority to agree to a loan modification. Often, the secured creditor and the entity with full authority to modify the loan will be one and the same. At times a servicing agent may have full authority to modify the loan, but the fact that it is

merely a servicer acting on behalf of a loan holder, and the identity of that holder, is relevant to that factual question.   In any event, these two sections were amended simultaneously with a clear purpose – to increase transparency and clarity in what can otherwise be a quite bewildering process, both in order to avert any avoidable foreclosures through loan modifications and to protect the integrity of Georgia's real property records.   This is evidenced by the title of the 2008 bill amending the statute, which describes its purpose as follows:

> AN ACT to amend Article 7 of Chapter 14 of Title 44 of the Official Code of Georgia Annotated, relating to foreclosure on mortgages, conveyances to secure debt, and liens, so as to require a foreclosure to be conducted by the current owner or holder of the mortgage, as reflected by public records; to provide for the identity of the secured creditor to be included in the advertisement and in court records; to change the requirement for mailing or delivery of notice to debtor for sales made under the power of sale in a mortgage, security deed, or other lien contract; to provide for the content of such notice; to provide for related matters; to provide an effective date; to repeal conflicting laws; and for other purposes.

2008 Georgia Laws Act 576 (S.B. 531).

The goal of the amendment is bolstered by other related sections of the Georgia Code.   Section 162.3 states that the borrower cannot waive the statutory notice at the time the security interest is created.   *See* O.C.G.A. § 44-14-162.3(c) ("[n]o waiver or release of the notice requirement of Code Section 44-14-162.2 shall be valid when made in or contemporaneously with the security instrument containing the power of nonjudicial foreclosure sale").   The fact that the notice requirement is nonwaivable demonstrates the consumer protection purpose of these interrelated sections.   Moreover, section 162.4 provides:

> All deeds under power shall contain recitals setting forth the giving
> of notice in compliance with Code Section 44-14-162.2 or a
> statement of the facts which render the same inapplicable thereto,
> which facts may include, without limitation, the nonresidential
> character of the property. The effect of such recitals shall be to
> protect the validity of the title of any subsequent purchaser in good
> faith other than the lender.

O.C.G.A. § 44-14-162.4.   Requiring the recitals of actions taken in compliance with the statute to be incorporated into the foreclosure deed (the "deed under power" of sale) emphasizes the legislative purpose of protecting the integrity of Georgia's real property title records.   All of these interrelated code sections show that the statute requires clear disclosure of the secured creditor and the entity with authority to modify the loan and does not permit obfuscation and subterfuge on these material points.

Under the facts alleged here, if presumed true, the actual "secured creditor" did not provide notice of the foreclosure sale as required by O.C.G.A. § 44-14-162.2.   Nor did the servicer, acting as agent for the secured creditor, send a foreclosure notice that properly identified the secured creditor.   Rather, the loan servicer sent a notice of foreclosure identifying itself as the secured creditor when it was not.  (Am. Compl. Exs. B, D, E.)

Other judges of this district have grappled with the issue of whether a servicer can send the notice required under O.C.G.A. § 44-14-162.2.   *See, e.g., LaCosta v. McCalla Raymer*, No. 1:10-CV-1171-RWS, 2011 WL 166902 (N.D. Ga. Jan. 18, 2011).   In *LaCosta*, Judge Story explained that under agency law, "a principal has the power to appoint someone to act on his behalf," and therefore a

secured creditor should be able to direct its servicer to send the statutory notice. *Id.* at *4.  Judge Story further explained, "The goal of Section 162 is to give the debtor notice of the foreclosure sale.  Whether that notice is provided by the secured creditor directly, or by its agent, is of no consequence." *Id.*

While it may be of no consequence who actually sends the notice, and that task may properly be delegated to a servicing agent (or, as is often the case, an attorney), the amendments of sections 162 and 162.2 in 2008 make clear that the identity of the secured creditor conducting the sale is a material element of that notice.  The identity of the secured creditor is material because of its bearing on the entity with authority to modify the loan.  Misidentifying the secured creditor creates confusion and doubt regarding the identification of the entity with authority to modify.  Moreover, disclosing that Bank of America has full authority to modify and is the creditor for the loan is materially different from disclosing that Bank of America has full authority to modify on behalf of a creditor, Fannie Mae, within whatever guidelines that creditor may have imposed.  *See* Adam Ashcraft and Til Schuermann, *Understanding the Securitization of Subprime Mortgage Credit*, 318 FEDERAL RESERVE BANK OF NEW YORK STAFF REPORT at 9 (2008) (investors "can put hard rules into the pooling and servicing agreement limiting loan modifications"); *Loan Workout Hierarchy for Fannie Mae Conventional Loans* (2012), available at www.efanniemae.com/sf/servicing/pdf/ loanworkoutfactsheet.pdf; *Pasillas v. HSBC Bank*, 255 P.3d 1281, 1283 (Nev. 2011) (servicer violated Nevada mediation program rules by failing to bring to the

mediation a person with authority to modify the loan, as it "needed additional authority from investors to agree to a loan modification").

This reasoning is not inconsistent with the Eleventh Circuit's recent approval of a grant of summary judgment for the defendants in a wrongful foreclosure suit where the servicer sent the foreclosure notice, but the notice identified the true secured creditor. *See Smith v. Saxon Mortgage*, No. 11-11762, 2011 WL 5375063 (11th Cir. 2011), *summarily aff'g* No. 1:09-CV-3375, at 6-7 (N.D. Ga. March 16, 2011) (granting summary judgment for defendants where foreclosure notice was sent by the servicer but "clearly identified the creditor and the loan servicer and was in no way misleading"). Sending a foreclosure notice that *misidentifies* the secured creditor violates the spirit and intent of O.C.G.A. § 44-14-162.2.

Defendants concede in their reply brief that Fannie Mae was the secured creditor, and simply argue that Bank of America could send the foreclosure notice as Fannie Mae's agent. (Reply at 4-5.)  While troubling for the reasons set forth above, this concession bolsters Plaintiff's other basis for his wrongful foreclosure claim – that the assignment of the security deed to the secured creditor, Fannie Mae, was not filed prior to the time of sale.  Defendants argued in their original brief that there was no need to record an assignment to Fannie Mae because the assignment to Bank of America was sufficient to comply with section 162(b). That argument assumes a definition of "secured creditor" that is equivalent to "beneficiary or assignee of the security deed."  However, such a definition would

render the 2008 amendment of section 162 meaningless, for whatever entity is the grantee of record of the security deed would have authority to foreclose, just as it did prior to the amendment.  Secured creditor must have a fixed definition in order for the amendment to have meaning, and this Court is bound to apply the presumption that the legislature did not intend to "enact meaningless language." *Osborne Bonding & Surety Co. v. Georgia*, 481 S.E.2d 578, 579 (Ga. 1997).

Plaintiff has alleged facts making it plausible that Fannie Mae was in fact the secured creditor at the time of the foreclosure and has alleged that no assignment to Fannie Mae was filed prior to the time of sale as required by O.C.G.A. § 44-14-162(b).  Therefore, based on the allegations in the amended complaint, BAC evaded the most substantive requirements of Georgia's foreclosure statute in that (1) it was not the secured creditor entitled to foreclose despite providing a notice letter affirmatively representing it was the creditor; and (2) it failed to file the assignment of the security deed to the secured creditor in the county deed records prior to the foreclosure.  *See* O.C.G.A. § 162(b); *Weems v. Coker*, 70 Ga. 746, 749 (Ga. 1883); *Cummings v. Anderson*, 173 B.R. 959, 963 (Bankr. N.D. Ga. 1994).[3]  The Court accordingly **DENIES** the motion to

---

[3]   While other respected members of this court have declined to hold that Georgia law requires an entity to possess both the security deed and promissory note in order to foreclose, they have done so in the context of counsel's apparent failure to draw the court's attention to relevant precedent.  *See LaCosta*, 2011 WL 166902, at *5; *Nicholson v. OneWest Bank*, 1:10-CV-795-JEC-AJB, 2010 WL 2732325, at *4 (N.D. Ga. April 20, 2010).  Based on this Court's review of applicable Georgia law, as discussed previously in *Morgan v. Ocwen Loan Servicing, LLC*, 795 F. Supp. 2d 1370, 1376 (N.D. Ga. 2011), the Court concludes that Georgia statutes and case law require the holder of the loan to carry out the foreclosure and to identify itself as the secured creditor of public record prior to the foreclosure sale.

dismiss Plaintiff's claim for wrongful foreclosure based on failure to comply with Georgia foreclosure law.

### B.    BAC Not Registered to Do Business in Georgia

Plaintiff also seeks to set aside the foreclosure of his home based on the fact that BAC is a foreign limited partnership and failed to register to do business in Georgia prior to carrying out the foreclosure.  (Am. Compl. ¶¶ 3-5.)  This allegation does not state a claim for relief, as the statute requiring foreign limited partnerships to register with the Secretary of State prior to transacting business in Georgia specifically exempts "making loans or creating or acquiring evidences of debt" and "securing or collecting debts or enforcing any rights in property securing the same" from the definition of "transacting business."  *See* O.C.G.A. § 14-9-902.  Therefore, Plaintiff's claim for wrongful foreclosure on the basis of BAC not having registered to do business in Georgia is **DISMISSED**.

### C.    Fraud Claim

Plaintiff Stubbs asserts a fraud claim, alleging that the foreclosure resulted from Bank of America's fraudulent misrepresentations that it would evaluate him for a loan modification.  (Am. Compl. ¶¶ 5-6.)  However, Plaintiff alleges that Bank of America said he could be "considered" for a loan modification only if he was in default on his payments; he does not allege that Bank of America guaranteed that he would be *approved* for a modification if he defaulted.  (*Id.* ¶ 6.)  His allegation that Bank of America later denied his request for a loan modification is not equivalent to an allegation that Bank of America did not

13

*consider* him for a modification. Therefore, Plaintiff has not alleged a misrepresentation of fact. *See American Dental Ass'n v. Cigna Corp.*, 605 F.2d 1283, 1291 (11th Cir. 2010) (under the heightened pleading standard for fraud imposed by Fed. R. Civ. P. 9(b), a plaintiff must allege the precise statements or misrepresentations made and the manner in which these statements misled the plaintiff). Plaintiff has failed to properly plead a misrepresentation of fact despite the Court's prior Order addressing this issue. (Order, Doc. 6, May 5, 2011.) Therefore, the Court **DISMISSES** Plaintiff Stubbs' fraud claim.

## V.    Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss the amended complaint [Doc. 9]. The Court **DISMISSES** Plaintiff's fraud claim and his claim based on BAC's failure to register to do business in Georgia. The motion to dismiss is **DENIED** as to Plaintiff's wrongful foreclosure claim. The Court will hold a telephone status conference with the parties on February 23, 2012, at 11:30 a.m.

**IT IS SO ORDERED** this 16th day of February, 2012.

**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**